Aug. 13,<br>1875. }          RICE *v.* MERRIMACK HOSIERY CO.

*Equity—Certainty of allegations—Enforcing individual liability of stock-holders in a foreign corporation.*

In proceedings in equity, whatever is essential to the rights of the plaintiff, and is necessarily within his knowledge, must be alleged positively in the bill.  Such convenient degree of certainty must be adopted as will give the defendant full information of the case which he is called upon to answer.

The laws of a foreign state operate beyond its territorial limits only *ex comitate.*  The courts of a state where the laws of such foreign state are sought to be enforced, will use a sound discretion as to the extent and mode of that comity.  They will not permit their tribunals to be used for the purpose of affording remedies which are denied to parties in the jurisdiction of the state that enacted the law, and which tend to operate with hardship on their own citizens and subjects.

A creditor of a corporation, created under the laws of Ohio, filed a bill to enforce the individual liability of the stockholders of the corporation.  The corporation had no assets in this state, and none of its stockholders resided here.  The bill contained no recital by what remedial process the individual liability of stockholders is enforced in that state.  *Held,* that

comity does not require the courts of this state, in the exercise of a judicial discretion, to give effect here to the statutes of that state.

FROM GRAFTON CIRCUIT COURT.

IN EQUITY. The bill was as follows: William A. Rice of Bristol, in said county, in behalf of himself and others, creditors of the Merrimack Hosiery Company, who shall come in and contribute to the expenses of this suit, complains against the said Merrimack Hosiery Company, an association of individuals claiming to be a body corporate and politic, and to have and possess certain corporate powers, under and by virtue of the laws of the state of Ohio, and R. A. Holden of Cincinnati, in the county of Hamilton and state of Ohio, and Ira S. Holden of Baltimore, in the county of Baltimore and state of Maryland, and Edgar B. Thomas of Indianapolis, in the county of Marion and state of Indiana, and William Wood of Cincinnati aforesaid, and A. Shepard of Compton, in the county of Kenton and state of Kentucky, as follows, to wit: The said Holdens, Thomas, Wood, and Shepard, as the plaintiff is informed and believes, on the second day of July, 1868, associated themselves with one Charles W. Beal, of Cincinnati aforesaid, now deceased, and perhaps with sundry other persons to the plaintiff unknown, under the laws of the state of Ohio, as an association or joint stock company, under the name of the Merrimack Hosiery Company, claiming certain corporate rights and powers under the laws of said state, with a capital stock claiming to be fifty thousand dollars, with its principal office in Cincinnati aforesaid, for the purpose of conducting in Bristol, in said county of Grafton, the business of manufacturing, by machinery, knit hosiery and other goods, and each of said parties owned or claimed to own stock in said company; that, by the laws of said state of Ohio, as the plaintiff is informed and believes, each and every stockholder in said company was then, and is now, liable for any debt due by said company to any laborer employed by said company in carrying on its manufacturing business; that, some time subsequent to their organization as aforesaid, the said defendants, under the name aforesaid, commenced the business of manufacturing, by machinery, knit hosiery goods, at Bristol aforesaid, and the plaintiff and sundry other persons went into their employ as laborers in said manufacture; that the manufacture so commenced was carried on by them until some time in April, or the first of May, 1872, when they stopped the business of manufacturing aforesaid, after having removed from the state most of their property, except the machinery with which said manufacturing had been carried on;—and, after repeated promises by the defendants and their agents that the business should be resumed, but which promises were as often broken, their property was attached, under process from the court in this state, and on or about the tenth day of December, 1872, upon a petition of one of its creditors, the said Merrimack Hosiery Company was adjudged a bankrupt under the laws of the United States.

While the said company were doing business at Bristol aforesaid, and before its adjudication in bankruptcy as aforesaid, it became justly indebted to the plaintiff, for labor and services done and performed in and about its business, to a large amount, to wit, the sum of fifteen hundred dollars, which is still due the plaintiff. And the plaintiff says that, at the time said debt was contracted as aforesaid, nor since, has he any knowledge, except from reports, as to whether said Holdens, Thomas, Wood, and Shepard, either alone or with others, were associated together, under the laws of Ohio, as a corporation, or whether they had corporate powers, or whether the capital stock, if they had any, was paid in, or how it was owned, or whether they were mere partners in business, and by means thereof jointly and severally liable for all debts contracted by them; or, if they were a corporation under the laws of said state of Ohio, whether they had done and performed such acts as by said laws would relieve them, as stockholders, from personal liability for the plaintiff's debt;—and as to all and singular of said facts, queries, and claims, the plaintiff prays the said defendants may be compelled to prove the same by competent evidence, if they claim the benefit thereof. And the plaintiff avers that all said defendants had notice of his debt, contracted as aforesaid, and a demand was made upon said company more than sixty days before the filing of this bill, to wit, on the first day of November, 1872; and, by means of the premises aforesaid, the plaintiff avers that the defendants, whether as stockholders of the Merrimack Hosiery Company or as partners, became and were, personally, jointly, and severally, liable to pay the same; yet they have not paid the same, nor any part thereof, but refuse so to do. And the plaintiff also avers, that the said Ira S. Holden owns a large amount of real estate, to wit, of the value of three thousand dollars, situate in New Ipswich, in the county of Hillsborough in this state, over which said court has jurisdiction.

Wherefore the plaintiff prays that the said defendants may come to a just and fair account of the sum due to the plaintiff upon the demand aforesaid, and that they may be decreed to pay the amount so due to the plaintiff, and for such other relief as may be just.

The defendants demurred to the bill, and assigned the following causes: (1) No equity on the part of the plaintiff is disclosed in the bill. (2) The plaintiff has a plain and adequate remedy at law. (3) Upon the allegations in the bill, the plaintiff is not entitled to the relief prayed for. (4) The assignee of the said hosiery company, in bankruptcy, should be made a party. (5) The bill is, in all respects, uncertain, informal, and insufficient. (6) The plaintiff's only remedy is to be had in the proceeding in bankruptcy, mentioned in the bill.

The questions raised by the demurrer were transferred to this court by FOSTER, C. J.

*Barnard,* for the plaintiff.

As to the first and second reasons assigned for demurrer, it does not

appear from the bill whether the defendant company was a corporation or joint stock company, with corporate powers, or a partnership; nor can these facts be determined until the defendants' answer, nor perhaps until the final hearing. If the remedy is doubtful and obscure at law, equity will assert a jurisdiction. Story's Eq. Jur., sec. 33 ; *W. L. Co.* v. *Worster*, 29 N. H. 433; *Rathbone* v. *Warren*, 10 Johns. 587 ; *King* v. *Baldwin*, 17 Johns. 384. As to the third and fifth reasons, I will rest upon the allegation of the bill, until some further suggestions are offered why, upon the facts stated, the plaintiff is not entitled to a judgment for his debt. As to the fourth reason, the assignee receives his appointment from and settles his account with the courts of another jurisdiction, and as he cannot be affected by any decree in the suit, he need not be a party. *Busby* v. *Littlefield*, 31 N. H. 193 ; *Bell* v. *Woodward*, 42 N. H. 189; *Batchelder* v. *Wendell*, 36 N. H. 213. As to the 6th reason assigned, bankruptcy is not the only remedy, if the defendant company is a corporation. *The Ansonia Brass and Copper Co.* v. *The New Lamp Chimney*, New York state, court decision, 10 N. B. R. 355 ; 2 N. B. R. 108 ; 2 N. B. R. 81. If not a corporation, whatever was done in bankruptcy is immaterial as affecting this case, as there is no pretence that any other of the defendants are tainted with bankruptcy.

*Carpenter* (with whom was *Blair*), for the defendants.

I. The bill is bad for uncertainty. If it were taken *pro confesso*, no relief could be granted—no decree be entered up. Story's Eq. Pl., secs. 241–258, and cases cited ; Daniels Ch. Pl. and Pr., secs. 411, 412, 420, *et seq.; Cresset* v. *Mytton*, 3 Bro. Ch. 481 ; *Jones* v. *Jones*, 3 Mer. 172, 173.
(1) The plaintiff ought not to be permitted to amend. There is not sufficient matter well alleged in the bill to amend by—to furnish a foundation for an amendment. Any serviceable amendment, which can in the nature of the case be made, must be equivalent practically to the filing of a new bill. Such gross looseness in pleading ought to be discouraged emphatically by the court, as prolonging litigation, entailing much useless expense upon the parties, and thereby bringing a reproach upon the administration of justice. (2) If allowed to amend, it should be upon terms that the plaintiff indemnify the defendants for all the costs to which they have been subjected up to the time of the filing of the amendment, including counsel fees.
II. Upon any view which can be taken of the bill, considering not only what is well alleged, but also what may be surmised to be its object from the whole taken together, the plaintiff has a plain and adequate remedy at law.
(1) He alleges expressly that he has such remedy—that his cause of action is good at law. Whether he is right or not is immaterial for the purpose of this demurrer. In the face of his own allegation, the court will not stop to consider whether upon the facts stated he has

come to a correct legal conclusion or not. *Edwards* v. *Edwards*, Jacobs 335. (2) But his conclusion is correct upon any possible state of facts suggested in the bill as claimed by anybody. (1) If the defendants are personally liable as stockholders of a corporation organized under the laws of Ohio, and in the manner and to the extent intimated in the bill (clauses 3 and 10), it is perfectly plain that the plaintiff's remedy (if he has any here in any form) is complete and adequate at law. The bill suggests (so far as it makes any intimation at all on the subject) a primary and absolute joint and several liability, without conditions or limitations. *Corning* v. *McCullough*, 1 N. Y. 47; *Southmayd* v. *Ross*, 3 Conn. 52. It is probable that the draughtsmen of the bill had in mind the statute of this state requiring all proceedings against stockholders of corporations, for the purpose of enforcing their individual liability for the debts of the corporation, to be by a bill in chancery. Laws of 1857, ch. 1962; Gen. Stats., ch. 136, sec. 1. But that statute is by its express terms limited to proceedings against stockholders of corporations organized under the laws of this state. Laws of 1857, ch. 1962. The change of phraseology in the General Statutes is verbal only, and was not intended to change the construction. Report of Com., ch. 136, sec. 1. It is, moreover, plain from the context—from the whole chapter in the General Statutes of which this section forms a part—that it is applicable to the case of domestic corporations only. Broom. Leg. Max. 25. (2) If the defendants were " mere partners," doing business under the name of said company, the question cannot be open to doubt. It is not suggested that the plaintiff was one of the firm, and it is quite too plain for argument, that he has no more occasion than any and every creditor of a partnership to invoke the aid of equity to collect his debt.

III. But, if the defendants were copartners, the bill discloses no equity on the part of the plaintiff. It alleges that the company—that is to say, the partnership, upon this theory of the plaintiff's case—was adjudged a bankrupt December 10, 1872, and it is nowhere intimated that the proceedings in bankruptcy were not pending at the time of the filing of the bill, and that the plaintiff had not proved his debt against the firm, or that, if terminated, the company has not received its full discharge. In either case the plaintiff has no equity—cannot maintain his bill. Bankrupt Laws, secs. 21–36. It is no answer to say that these facts are matter of defence, to be set up by the defendants in their plea or answer. Undoubtedly that would be so, if the plaintiff had not gone out of his way to allege, in his bill, that the company was adjudged a bankrupt, having stated that he must state every other fact which the existence of that fact renders necessary, in order to entitle him to relief. Story's Eq. Pl., sec. 257; *Shepard* v. *Shepard*, 6 Conn. 37; *Hobart* v. *Frisbie*, 5 Conn. 592; *Perry* v. *Carr*, 41 N. H. 371; *Harrison* v. *Nixon*, 9 Pet. 483, 11 Cart. 442.

IV. The plaintiff makes no better case against the defendants as stockholders of a corporation. (1) It is not alleged, with sufficient directness and certainty, that the defendants, as stockholders, are by the

laws of Ohio liable for the debts or any of the debts of the corporation.
The allegation that " the plaintiff is informed and believes " they are so
liable, is not sufficient. Daniell's Ch. Pl. and Pr. 411. (2) But if the aver-
ment be sufficiently positive, it is nevertheless insufficient. The liability,
if it exists at all, must, since it does not exist at common law, be created
by the statutes of Ohio; and the laws of that state upon which the
plaintiff relies, or so much of them as may be material, must be specifi-
cally set forth in the bill and proved, like any other facts in the case.
The general allegation, that by the laws of Ohio they are liable, &c.,
as a statement of fact, is quite too loose and vague, and, as a conclusion
of law, amounts to nothing unless the facts upon which it is predicated
are set forth, in order that the court may judge for itself whether it is
correct or not.    *Walker* v. *Maxwell*, 1 Mass. 103 ; *Pearsall* v. *Dwight*,
2 Mass. 84; *Collett* v. *Keith*, 2 East 273–274 ; *Holmes* v. *Boughton*,
10 Wend. 55; *Horford* v. *Nichols*, 1 Paige 220; *Brunswick* v. *Hanover*,
6 Beav. 59; *Whitford* v. *Railroad*, 23 N. Y. 467.    So a private act,
essential to a party's action or defence, or so much thereof as is mate-
rial, must be specifically recited and set out in pleading, whether at
law or in equity.  Gould's Pl. 56, sec. 16; 1 Chitty's Pl. 215, 372, 373;
Bull. N. P. 224; *Lee* v. *Clark*, 2 East 333–341; Dwarris on Stats.
465; *Pearson* v. *Tower*, 55 N. H. 36.    Upon analogous grounds, it is
held that where the bill proceeds upon the ground of fraud it is not
enough to make the charge in general terms, but the bill must point
out the particular acts of fraud.  Story's Eq. Pl., sec. 251; *Munday*
v. *Knight*, 3 Hare 497.

V. If the company is a corporation, and the proceedings in bank-
ruptcy are still pending—as must be presumed, there being no aver-
ment to the contrary—the assignee of the company, being its only
legal representative, should be made a party to the bill.  *Bogardus* v.
*Company*, 7 N. Y. 151 ; *Hadley* v. *Russell*, 40 N. H. 109; *Erickson* v.
*Nesmith*, 4 Allen 237.

VI. But assuming that the defendants were stockholders of a corpora-
tion organized under the laws of Ohio, and by those laws made secondarily
liable for its debts, or for any of them, no action either at law or in
equity can be maintained against them in this state on account of, or to
enforce, that liability.  (1) The contract between the plaintiff and cor-
poration was (so far as disclosed in the bill) made, and was to be per-
formed in this state.  Its nature, validity, construction, the extent of
its obligation, its operation and effect, are therefore governed exclu-
sively by the laws of this state, and can be in no wise affected by the
laws of Ohio.    Mor. Dig., tit. Conflict of Laws, I ; Story's Conflict of
Laws, secs. 322, 330.    The fact that one party to this contract is a
corporation, organized under the laws of another jurisdiction, and hav-
ing no existence here except by courtesy, makes no difference in the
rule.    *Whitford* v. *Railroad*, 23 N. Y. 474, Denio, J. ; *Merrick* v. *Van
Santvoord*, 34 N. Y. 218, Porter, J. ; *Bank* v. *Earle*, 13 Pet. 588, 589
(13 Curt. 282, 283), Taney, C. J. ; *Danforth* v. *Perry*, 3 Met. 564;
*Company* v. *Blackstone*, 13 Gray 489 ; *Rallstone* v. *Railroad*, 50 N. Y.

656. By the laws of this state the stockholders of a foreign corporation are not liable for the debts of the corporation—*vide* point VII. If, therefore, the stockholders' liability is a part of, or an incident of the contract, it follows that the defendants are not liable anywhere, not even in Ohio—*vide Hutchins* v. *Coal Co.*, 4 Allen 580. But such is not the case: on the contrary, (2) the liability is a mere creature of the statute, having none of the elements of a contract, whether express or implied. It is a naked statutory liability, entirely unknown to the common law, for the indebtedness of the corporation, however it may accrue, whether from a breach of the contract, or the commission of a tort. The stockholder is not liable upon the contract in the one case, nor for the tort in the other, but, under the statute, for the debt against the corporation, which may grow out of either. *Hicks* v. *Burns*, 38 N. H. 145 ; *Haynes* v. *Brown*, 36 N. H. 545–566 ; *Kelton* v. *Phillips*, 3 Met. 63 ; *Knowlton* v. *Ackley*, 8 Cush. 93–96 ; *Pratt* v. *Bacon*, 10 Pick. 123–127 ; *Andrews* v. *Callender*, 13 Pick. 484–490 ; *Erickson* v. *Nesmith*, 15 Gray 221. And this liability can be enforced only by proceedings founded directly upon the statute, and in the jurisdiction where it is in force.

It is a well settled general principle, of universal application and without exception, that the laws of a state have, *ex proprio vigore*, no extra territorial force. Story's Confl. Laws, secs. 21–29 ; *Dyer* v. *Hunt*, 5 N. H. 401 ; *Blanchard* v. *Russell*, 13 Mass. 4. The proposition found in some of the books, " that the laws of one country will, by the comity of nations, be recognized and executed in another where the rights of individuals are concerned "—*Bank* v. *Earle*, 13 Pet. 589, 13 Curt. 283 ; or as otherwise variously expressed—Story's Confl. Laws, sec. 29, Huberus, 3d rule—signifies, merely, that the tribunals of one nation will treat a cause of action arising in another, and coming before them for adjudication, as bringing with it, in general, all the elements and incidents attached to it by the laws of the country where it arose.

That courts in so doing " enforce " or " execute " the foreign laws, can be properly said, if at all, only in a greatly modified and restricted sense. Such laws are in no case given effect unless they " have actually [in the jurisdiction where they are in force] operated upon the case" or cause of action. TINDAL, C. J., in *Huber* v. *Steiner*, 2 Bing. N. C. 202 ; Story's Confl. Laws, sec. 582. The nature, validity, construction, effect, &c., of a contract, are governed exclusively by the laws of the place where it is made and to be performed, not upon the ground that the laws of such place are or can be directly enforced or executed in other jurisdictions, but because they constitute elements of the contract, and travel with it wherever the parties thereto may be found. WASHINGTON, J., in *Ogden* v. *Edwards*, 12 Wheat. 159, 7 Curt. 137 ; *Bliss* v. *Houghton*, 16 N. H. 90, 91 ; *Watriss* v. *Pierce*, 32 N. H. 582 ; *Potter* v. *Brown*, 5 East 132 ; *Whittemore* v. *Adams*, 2 Cow. 632 ; *Warder* v. *Arell*, 2 Wash. (Va.) 295, ROANE, J.

A valid foreign marriage is valid everywhere—valid here, although it would be void if celebrated here, not because we " enforce " or

" execute," in the ordinary sense of those words, the laws of the foreign state, but because, as Lord ELLENBOROUGH puts it, " we always import, together with their persons, the existing relations of foreigners as between themselves, according to the laws of their respective countries." Did the ceremony, by virtue of the laws in force and operating in the country where it took place, constitute a marriage? If it did, that relation of the parties, so established, travels with them, and will be recognized wherever they go: it is, in fact, a contract.   *Potter* v. *Brown*, 5 East 132; *Watriss* v. *Pierce*, 32 N. H. 582; *Cambridge* v. *Lexington*, 1 Pick. 506.

In actions for torts committed in a foreign state, the court look into the laws of such state for the sole purpose of determining whether any wrong was committed.   A justification of the act complained of, by the law of the place where it was done, will be held a justification everywhere.   *Mostyn* v. *Fabrigas*, Cowp. 161; *Madrazo* v. *Willes*, 3 B. & Ald. 353; *Forbes* v. *Cochrane*, 2 B. & C. 448; *Dobree* v. *Napier*, 2 Bing. N. C. 781; *Navigation Co.* v. *Guillou*, 11 M. & W. 877; *Buron* v. *Denman*, 2 Exch. 167; *Scott* v. *Seymour*, 1 H. & C. 219; *Cammell* v. *Sewell*, 3 H. & N. 617; S. C. in error, 5 H. & N. 728; *Henry* v. *Sargeant*, 13 N. H. 321.

Personal disabilities by the law of the domicil, as in the case of minors and married women, follow, it is said, the person;—but by this is intended, not that the law creating their disabilities there will be enforced or applied here,—for although their contracts made there will be held void or voidable here, yet their contracts made here, if under our laws no such disability rests upon them, will be held valid not only here, but even in the place of their domicil.   *Male* v. *Roberts*, 3 Esp. 163; *Thompson* v. *Ketchum*, 8 Johns. 189; 2 Kent's Com. 458, and note; Story's Confl. Laws, 96, 97, and 98.

Persons coming *en autre droit* as guardians, executors, administrators, and assignees in bankruptcy or insolvency, under the appointment of foreign laws, cannot be parties to actions or exercise authority here, for the plain reason that the laws conferring their powers can have no extra territorial force.   So of all other officials acting by authority of law.   *Morell* v. *Dickey*, 1 Johns. Ch. 153; *Leonard* v. *Putnam*, 51 N. H. 247, and cases cited; *Bird* v. *Caritat*, 2 Johns. 342; *Raymond* v. *Johnson*, 11 Johns. 488; *Dawes* v. *Boylston*, 9 Mass. 337; *Williams* v. *Storrs*, 6 Johns. Ch. 353–357.

Personal property may pass to the assignee under a foreign bankrupt law, not however upon the ground that such law may be enforced or executed in other jurisdictions, but for the reason that personal property follows the person of the owner, and, in contemplation of law, is deemed to be situated in the country where he resides.   *Sill* v. *Worswick*, 1 H. Bl. 665, 690, 694; *Holmes* v. *Remsen*, 4 Johns. Ch. 440, 469, 470; *Doe* v. *Vardill*, 5 B. & C. 438; 2 Kent's Com. 406; Story's Confl. Laws, sec. 403, *et seq*.   Real estate, on the other hand, cannot so pass, since it could only do so by virtue of the direct operation of a law of one jurisdiction in the territory of another.   *Doe* v.

*Vardill,* 5 B. C. 438; *Eyre* v. *Storer,* 37 N. H. 115; Story's Confl. Laws, sec. 428.

To enforce a contract, or any cause of action, the active and direct operation of law must be invoked; and hence we find it universally agreed that all questions relating to the remedy are governed exclusively by the *lex fori,* although it is said to be " a general principle that the penal laws of one country, cannot be taken notice of in another "—that " the courts of no country execute the penal laws of another "— *Ogden* v. *Folliott,* 3 T. R. 733, *The Antelope,* 10 Wheat. 123 (6 Curt. 344), Story's Confl. Laws, secs. 620, 621; yet a contract, void where it is made and to be performed, though by force of a penal law, is void everywhere. And foreign penal laws are noticed and enforced in precisely the same sense and upon the same principle, if not to the same extent, as any other foreign laws. *Houghton* v. *Page,* 2 N. H. 46, 47; *Scoville* v. *Canfield,* 14 Johns. 338; *Warder* v. *Arell,* 2 Wash. (Va.) 298, PENDLETON, presiding; *Henry* v. *Sargeant,* 13 N. H. 332, PARKER, C. J. So, also, of revenue laws—Story's Confl. Laws, secs. 245, 256, 257, *Alves* v. *Hodgson,* 7 T. R. 243, *Henry* v. *Sargeant,* 13 N. H. 321—and of laws strictly criminal even; for although a person convicted of felony in this state is not thereby rendered an incompetent witness in another state—*Com.* v. *Green,* 17 Mass. 515—yet if incompetent here, and a witness to the will of a testator domiciled here, devising personal property, the will being invalid here would for that cause be held invalid everywhere. Gen. Stats., ch. 174, sec. 6; *Carlton* v. *Carlton,* 40 N. H. 18; *Saunders* v. *Williams,* 5 N. H. 214; *Heydock's Appeal,* 7 N. H. 502, 503. If real estate only were devised, we might have a case of a will void by the law of the testator's domicil, and valid everywhere else.

The tribunals of a country whose institutions and policy prohibit slavery, will, nevertheless, recognize its existence in another country, and the laws there prevailing in respect to it, and execute those laws in the same sense that any other foreign laws are executed by them. Story's Confl. Laws, sec. 104; *Madrazo* v. *Willes,* 3 B. & Ald. 353; *Forbes* v. *Cochrane,* 2 B. & C. 448; *Buron* v. *Denman,* 2 Exch. 167; *The Antelope,* 10 Wheat. 66 (6 Curt. 337).

Courts have, it is submitted, and in the nature of the case can have, no power to execute and enforce directly the laws of another jurisdiction in any case, nor can they give to them any effect whatever, direct or indirect, except in so far as they have become by their operation, in the place where it accrued, elements of the cause of action before the court for adjudication. In this respect there is no sound distinction between revenue or penal and any other laws. Thus, in an action brought here for an assault committed, for example, in Vermont, the revenue laws of that state may afford a complete justification,—that is to say, may show that the plaintiff never had any cause of action— *Henry* v. *Sargeant,* 13 N. H. 321; but if the assault had been committed here by the same party and for the same purpose, the laws of that state could not afford the slightest justification. In short, to

whatever forum a cause of action properly can come, it comes bearing with it all the incidents imposed upon or attached to it by the laws of the place where it accrued, and the laws of that place are drawn in question so far only as they have, by their operation there, affected the transaction out of which it arose. It is a corollary of this doctrine, and at the same time a strong argument in support of it, that actions for common-law causes only can be sustained out of the jurisdiction in which they accrue.

All actions local at common law, must necessarily be brought in the jurisdiction where the cause arises. *Doulson* v. *Matthews*, 4 T. R. 503; *Watts* v. *Kenney*, 23 Wend. 484; S. C. in Error, 6 Hill 82; *Rogers* v. *Woodbury*, 15 Pick. 156. But transitory actions, for causes known to the common law, may be brought wherever that law prevails. By a fiction invented for the sake of the remedy, and which cannot, for the purposes of defeating the action, be contradicted, the cause may be alleged to have arisen wherever the action is brought, and the action is tried in all respects precisely as if such were the fact. *Mostyn* v. *Fabrigas*, 1 Smith L. C. 340, and notes. But actions for causes not known to the common law, though of a transitory nature, can be maintained in that jurisdiction only where they accrue, since they must necessarily rest for their support upon the direct force of the statute creating them. *Pickering* v. *Fisk*, 6 Vt. 102; *Hunt* v. *Pownal*, 9 Vt. 411; *Flower* v. *Allen*, 5 Cow. 665–669; *Wilson* v. *Rich*, 5 N. H. 456; *Needham* v. *Railroad*, 38 Vt. 294.

When a new right—that is to say, a right unknown to the common law—is given by a statute which at the same time provides a remedy, whether it be through a common law form of action, or by other forms of proceeding, that remedy is exclusive and can alone be pursued. *Chesley* v. *Smith*, 1 N. H. 22; *Stokes* v. *Sanborn*, 45 N. H. 278. If in such case no remedy is provided, the common law supplies it by giving to the party his appropriate action, founded upon the statute. Bull. N. P. 129; Com. Dig., Action upon Statute; *Rann* v. *Green*, Cowp. 474–476; *Knowlton* v. *Ackley*, 8 Cush. 97. In either case, the action is created by and derives all its vitality from the statute. And as, under the statute, no cause of action can accrue from any transaction in another jurisdiction—*Whitford* v. *Railroad*, 23 N. Y. 465–480— so, also, no action can be maintained in another jurisdiction for a cause which has accrued by force of the statute in the jurisdiction adopting it—*Richardson* v. *Railroad*, 98 Mass. 85; and for the same reason in both cases, namely, that the statute can have no extra territorial force, either to create a cause of action in the one case, or to sustain an action in the other.

It is plain, for example, that, except in the jurisdiction where the cause of action accrues, no action can be maintained against a town for an injury caused by a defective highway—*Eastman* v. *Meredith*, 36 N. H. 284, *Hunt* v. *Pownal*, 9 Vt. 411; or to recover moneys lost at gaming—*Welsh* v. *Cutler*, 44 N. H. 561, *Bristow* v. *James*, 7 T. R. 257, *Babcock* v. *Thompson*, 3 Pick. 446; or against a stakeholder to recover

money wagered, after he has paid it over to the winner—*Perkins* v. *Eaton*, 3 N. H. 152, *Hoit* v. *Hodge*, 6 N. H. 104, *McKeon* v. *Caherty*, 3 Wend. 495, *Fowler* v. *Van Surdum*, 1 Den. 557 ; or for the breach of official duties imposed by statute— *Wilson* v. *Rich*, 5 N. H. 456, *Flower* v. *Allen*, 5 Cow. 665–669, *Pickering* v. *Fisk*, 6 Vt. 102 ; or against either the relatives of a pauper, or against a town, under our Gen. Stats., ch. 74, secs. 8, 9 ; or for the repairs or building of fences, or for the fees of fence-viewers, under Gen. Stats., ch. 128, secs. 9, 11, 15 ; or for the repairs of mills, under Gen. Stats., ch. 127, sec. 10 ; or for neglecting to take depositions, according to notice, under Gen. Stats., ch. 210, sec. 10 ; or in a multitude of other similar cases which might be enumerated.  In short, I venture to assert that no well considered case is to be found in the books—although I do not pretend to have examined all, or even a major part of them—in which, the question being directly raised and determined by the court, an action for a cause unknown to the common law, and accruing in a foreign jurisdiction, has been sustained ;—see *Paine* v. *Stewart*, 33 Conn. 516, *Bond* v. *Appleton*, 8 Mass. 472.

The liability of stockholders for the debts of the corporation cannot be distinguished, so far as this question is concerned, from the liability created by statute in the various cases above referred to.  *Vide* authorities before cited.

The statute, like all statutes in derogation of the common law, is to be construed strictly : the liability will not be extended further than it is carried by the letter of the statute.  Unless otherwise expressly provided, the liability of the stockholder is personal to himself only, and cannot be enforced against his executor or administrator, or against his assignee in bankruptcy or in insolvency.  *Child* v. *Coffin*, 17 Mass. 64 ; *Ripley* v. *Sampson*, 10 Pick. 371 ; *Gray* v. *Coffin*, 9 Cush. 199 ; *Bangs* v. *Lincoln*, 10 Gray 600 ; *Dane* v. *Company*, 14 Gray 488.

The conclusion, that the liability of the stockholder for the debts of the corporation can be enforced in that state or jurisdiction only where by law the liability is imposed, is supported by all the authorities which we have upon the subject, whether put distinctly upon the precise ground herein stated or not.  *Erickson* v. *Nesmith*, 4 Allen 237 ; *Halsey* v. *McLean*, 12 Allen 438 ; *Erickson* v. *Nesmith*, 15 Gray 221 ; *Erickson* v. *Nesmith*, 46 N. H. 378; *Richardson* v. *Railroad*, 98 Mass. 85: *Whitford* v. *Railroad*, 23 N. Y. 480 ; *Hutchins* v. *Coal Co.*, 4 Allen 580.

It is needless to say that, if, by the terms of the company's charter, a special qualified corporate capacity only is conferred, leaving the stockholders to stand as partners, or joint and several promisors, and thus primarily liable on the contract itself, an altogether different case is presented.  *Corning* v. *McCullough*, 1 N. Y. 47 ; *Ex parte Van Riper*, 20 Wend. 614 ; *Southmayd* v. *Russ*, 3 Conn. 52 ; *Deming* v. *Bull*, 10 Conn. 415.  In that event, as already stated, the plaintiff's remedy at law is entirely adequate and complete.

VII. But the plaintiff seems to be quite as uncertain regarding the law properly applicable to his facts, as in regard to the facts them-

selves. He does not, indeed, expressly allege that he is "informed and believes" that the defendants, as stockholders, are liable also under the laws of New Hampshire, yet, from what he does allege, it is plain that he is in his chronic state of doubt upon the subject; that he has a suspicion that they may be, and intends, if necessary, to contend before the court that they are. Hence his statement that he does not know whether the capital stock was all paid in—his averment of a demand more than sixty days before the filing of the bill, and, as before suggested, his selection of the form of remedy. Gen. Stats., ch. 135, sec. 8, and ch. 136, secs. 1, 2. This point, however, is disposed of decisively by the language of our statutes. By their express terms they are made applicable to the stockholders of those corporations only which are organized under the laws of this state. Rev. Stats., ch. 146; Comp. Stats., ch. 147; Gen. Stats., chs. 133, 134, 135; *Reg.* v. *Edmundson,* 2 E. & E. 83, CAMPBELL, C. J.; *Lyndon* v. *Stanbridge,* 2 H. & N. 51, POLLOCK, C. B.; Broom's Leg. Max. 925.

SMITH, J.   I. One of the causes of demurrer assigned is, that the bill is uncertain, informal, and insufficient; and the bill is clearly open to this objection. It is an elementary rule, that the bill should state the right, title, or claim of the plaintiff with accuracy and clearness; and should in like manner state the injury or grievance of which he complains, and the relief which he asks of the court. The other material facts ought to be plainly yet succinctly alleged, and with all necessary and convenient certainty as to the essential circumstances of time, place, manner, and other incidents. Story's Eq. Pl., sec. 241. Whatever is essential to the rights of the plaintiff, and is necessarily within his knowledge, ought to be alleged positively. It is not a sufficient averment of a fact to state that a plaintiff "is so informed"— *Lord Uxbridge* v. *Staveland,* 1 Ves. 56—or to say that a defendant alleges and the plaintiff believes a statement to be true—*Egremont* v. *Cowell,* 5 Beav. 620; nor is an allegation that the defendant sets up certain pretences, followed by a charge that the contrary of such pretences is the truth, a sufficient allegation or averment of the facts which make up the counter statement. 1 Daniell's Ch. Pl. & Prac. 412. If every fact necessary to entitle the plaintiff to the relief prayed for is not distinctly and expressly averred in the stating part of the bill, the defect cannot be supplied by inference, or reference to averments in other parts. *Wright* v. *Dame,* 22 Pick. 55.

The bill charges that the defendants, with one Beal, since deceased, organized an association or joint stock company July 2, 1868, under the name of the Merrimack Hosiery Company, as the plaintiff is informed and believes, and perhaps with sundry other persons to the plaintiff unknown, under the laws of the state of Ohio, with a capital stock claimed by them to be $50,000, for the purpose of manufacturing goods at Bristol in this county, and having its principal place of office in Cincinnati, Ohio; that the defendants owned, or claimed to own, stock in said company; that by the laws of Ohio, as the plaintiff is

informed and believes, stockholders are liable for all debts due from the company to its laborers; that the plaintiff has no knowledge, except from reports, whether the defendants are a corporation or not; if a corporation, whether they ever had any capital stock, and if any, whether it was paid in, or how it was owned; and if a corporation, whether the defendants have done such acts as by the laws of Ohio would relieve them, as stockholders, from personal liability to the plaintiff; or whether they were mere partners in business, jointly and severally liable for all debts contracted by them. As to all and singular of said facts, queries, and claims, the plaintiff prays that the defendants may be compelled to prove the same by competent evidence, if they claim the benefit thereof.

These allegations are so general and uncertain as to draw with them the consequences and mischiefs of uncertainty in pleadings. The defects, we think, are fatal to the objects of the bill. There is no distinct allegation that the defendants are a corporation. The statement is made merely upon the plaintiff's information and belief; so, also, is the charge that the stockholders are liable under the laws of Ohio for the debts due from the company to its laborers. Besides, the allegation that the plaintiff has no knowledge, except from reports, whether the defendants are a corporation, or whether they had any capital stock, or whether it was paid in and who owned it, or whether the defendants were partners, is altogether too vague and uncertain. What allegations does this demurrer admit? or, if this bill should be taken *pro confesso*, what would it confess? Clearly, that the plaintiff has been informed and believes as he charges, and not that what he has been informed and believes to be true is true. The plaintiff is bound to state in his bill a case upon which, if admitted in the answer or proved at the hearing, the court can make a decree. 1 Daniell's Ch. Pl. & Prac. 412. In Story's Eq. Pl., sec. 255, it is laid down,—" That every fact essential to the plaintiff's title to maintain the bill and obtain the relief must be stated in the bill, otherwise the defect will be fatal. For no facts are properly in issue unless charged in the bill, and, of course, no proofs can be generally offered of facts not in the bill; nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleadings and evidence, for the court pronounces its decree *secundum allegata et probata*. The reason is, that the defendant may be apprised by the bill what the suggestions and allegations are against which he is to prepare his defence," and because the court cannot render judgment except upon what appears on the record.

One or two examples from those found in Story, derived from adjudged cases, will illustrate these principles. A bill was brought to perpetuate a right of common and of way. The charge in the bill was, that the tenants, owners, and occupiers of certain lands of a manor, *in right thereof or otherwise*, from time whereof the memory of man is not to the contrary, had, and of right ought to have, a common of pasture, &c., in a certain waste, &c. The bill was held bad on demurrer;

for the manner in which the right of common was claimed was not set forth with any certainty : it was not set forth as common appendant or appurtenant, but as that " or otherwise," which was no specification at all, and left any sort of right open to proof. *Cresset* v. *Mitton*, 1 Ves. Jr. 449 ; S. C., Bro. Ch. R. 481.

So where a bill sought a discovery and delivery up of title deeds to the plaintiff, and alleged that, at the time of the marriage of his father and mother, his mother was seized and possessed or entitled to divers freehold, copyhold, and leasehold estates, as one of the co-heiresses of her father, *or* under his marriage settlement, *or* his will, *or* codicil, *or by some such or other means ;* and that, upon the marriage of the plaintiff's father and mother, or before, or at some time after the said marriage, some settlement or settlements was or were executed, whereby all or some parts of the said estates were conveyed, upon certain trusts and purposes, in such a manner as that estates for life were given to his father and mother, or one of them, or at least an estate for life to his father, with a provision, by way of jointure or otherwise, for his mother, who died in the lifetime of his father,—remainder to the first son of his father and mother, or to their first and other sons severally and successively, *or in some manner ;* so that the plaintiff, upon the death of his father and mother, became seized or entitled to all or most of the estates, &c., *either in fee or absolutely*, *or as tenant for life*, or in *tail in possession*, *or in some other manner*, as would appear by the deeds, &c., in the defendant's possession. Upon demurrer, the bill was held bad for vagueness and uncertainty ; and that the defendant could not plead to it, but must discover all deeds relating to their estates. *Ryves* v. *Ryves*, 3 Ves. 343. That case, in the looseness of its statements and in the uncertainty of the facts essential for the plaintiff to know in order to make out his case, seems to finds its parallel in the one now before us. In short, the rule, as laid down, is as follows : "It is absolutely necessary that such a convenient degree of certainty should be adopted as may serve to give the defendant full information of the case which he is called upon to answer." 1 Daniell's Ch. Pl. and Prac. 421 ; *Cresset* v. *Mitton*, *supra ; Wormuld* v. *DeLisle*, 3 Beav. 18.

But, if we should assume that the defendants were duly organized into a corporation under the laws of Ohio, and if we should assume that the statutes of Ohio, if they had been recited in the bill, would show what the plaintiff has alleged,—that each stockholder is liable for any debt due by the corporation to any laborer employed by it in carrying on its manufacturing business,—there would still remain insuperable difficulties in maintaining this suit. The laws of a foreign state do not operate beyond its territorial limits *ex proprio vigore*, but only *ex comitate*. The courts of a state, where the laws of a foreign state are sought to be enforced, will use a sound discretion as to the extent and mode of that comity : they will not permit their tribunals to be used for the purpose of affording remedies which are denied to parties in the jurisdiction of the state that enacted the law, and which tend to operate with hardship on their own citizens and subjects. *Erickson*

v. *Nesmith*, 15 Gray 221. The liability which the plaintiff seeks to enforce is a mere creature of the statute, having none of the elements of a contract, whether express or implied: it is a naked, statutory liability, entirely unknown to the common law, for the indebtedness of the corporation however it may accrue, whether from the breach of a contract or the commission of a tort. The stockholder is not liable upon the contract in the one case, nor for the tort in the other, but, under the statute, for the debt against the corporation which may grow out of either. *Hicks* v. *Burns*, 38 N. H. 141. In order to arrive at a just conclusion in this case, it is important to know by what proceedings this liability is enforced in Ohio. By the statutes of New Hampshire, proceedings to enforce the liability of stockholders, under our laws, must be by bill in chancery. A creditor, seeking to enforce it, must join in the suit all the parties in interest who can be affected by the decree: the suit must be prosecuted for the benefit of all the creditors, and not for a portion of them. All the stockholders who can be reached by the process must be made defendants. The corporation itself must also be joined;— and thus, by avoiding a multiplicity of suits, the whole liability of the corporation is apportioned among the solvent stockholders, who can be reached by the process of the court, and by the decree each stockholder is compelled to pay his proportionate share of the debts: and thus, in one suit, the affairs of the corporation are practically wound up, and its burdens distributed equitably among the share-owners. *Hadley* v. *Russell*, 40 N. H. 109 ; *Erickson* v. *Nesmith*, 46 N. H. 371.

In *Erickson* v. *Nesmith*, 15 Gray 221—which was a suit at law brought to enforce the personal liability of a stockholder, residing in Massachusetts, of a corporation established in New Hampshire, for a debt of the corporation—the supreme court of that state, in the exercise of a sound discretion, refused to permit such suit to be maintained, upon the ground that the plaintiffs were seeking to enforce the liability against a citizen of Massachusetts, by a remedy denied to them in the courts of the state whose statutes created such liability; and because, if the suit could be maintained, it would operate with greater hardship on the citizens of Massachusetts than the remedy provided by the statute itself, and which alone they could pursue in New Hampshire.

The same creditors subsequently brought a suit in equity against Nesmith and others, stockholders of the same corporation, residing in Massachusetts—reported 4 Allen 233—said suit being brought in behalf of all the creditors, to enforce their claims against the stockholders, under the provisions of the statutes of this state making the stockholders individually liable for the debts of the corporation. It was held that the bill could not be maintained. In the opinion of the court, DEWEY, J., remarked as follows: " If this be so, we perceive at once strong reasons why such a bill should be brought in the state which created the corporation, and where the same is located by the express terms of its charter, and where its place of business is. The effect of maintaining such a bill is to draw before the court all the creditors of the corporation, all the stockholders, and, necessarily, as we

should suppose, the principal debtor,—the corporation itself. The fact of the residence of a single stockholder in Massachusetts, who might be liable in a New Hampshire corporation in common with a hundred stockholders residing there, would, upon that hypothesis, transfer to our jurisdiction all such stockholders and all the creditors, and authorize us to hear and adjust all conflicting questions as to the indebtedness of the corporation, who were stockholders, and what were the equities between them.

"Great practical difficulties meet us at once. There are strong reasons for holding that, in case of an existing corporation, the debt sought to be recovered of a stockholder should be first established by a judgment of court. If this be doubtful, it is, at least, necessary that, before such debt be established by the proceedings in the bill in equity, the corporation should have been made a party to the bill. *Bogardus* v. *Rosendale Manuf. Co.*, 3 Seld. 151. But we have no jurisdiction that will reach such corporation out of this commonwealth, and having no assets here; and the same is true of the stockholders residing in New Hampshire. A bill in equity in Massachusetts is, therefore, not the remedy intended to be prescribed by the statute of New Hampshire creating and regulating the liability of stockholders in a manufacturing corporation in New Hampshire."

In the suit between the same parties in this state, reported in 46 N. H. 371, SARGENT, J., in commenting upon the above decision of the court in Massachusetts, said,—" The result of the suit in Massachusetts was what might have been expected. The plaintiffs, in going to another state to try to enforce upon its inhabitants the special provisions of the laws of New Hampshire, would be very likely to find their mistake,—that the stockholders in Massachusetts did not belong to any corporation in that state to which the Massachusetts laws, to which alone they were amenable, had any application."

The defendant corporation was organized under the statutes of Ohio; it has its principal place of business there; the most of its stockholders probably reside there; if it has any assets, they will probably be found in that state; none of the stockholders are residents of this state; the corporation has no assets here; it has been adjudged a bankrupt; only one of its stockholders has any property within this state; and there is no recital in the bill by which we can be informed by what remedial process the individual liability of stockholders is enforced in that state. Under such circumstances I do not think comity requires us, in the exercise of a judicial discretion, to give effect to the foreign statutes here. Being without information as to the remedy afforded in Ohio, it might happen that we should afford a remedy here which is denied to persons in that jurisdiction, and which would not be allowed to persons seeking to enforce a similar right under our own laws. It is hardly necessary to add, that if the defendants are not a corporation, but are a partnership, the plaintiff has a plain and adequate remedy at law.

The defendants' counsel has argued at great length, and with signal ability, that the liability created by the statutes of Ohio, being entirely

unknown to the common law, no action either at law or in equity can be maintained in this state on account of or to enforce that liability. But in the view we have taken of this case we have not found it necessary to consider that question except incidentally. Several other questions raised by the demurrer we have also had no occasion to consider.

CUSHING, C. J., and LADD, J., concurred.

*Demurrer sustained.*